STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Dennis L. RICHARDSON, Defendant-Appellant.

Supreme Court

*No. 95–0501–CR. Oral argument December 5, 1996.—Decided June 17, 1997.*

(Also reported in 563 N.W.2d 899.)

695

For the plaintiff-respondent-petitioner the cause was argued by *Diane M. Nicks*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief and oral argument by Robert *N. Meyeroff*, Milwaukee.

¶ 1. JON P. WILCOX, J. The petitioner, State of Wisconsin (State), seeks review of a decision of the court of appeals, *State v. Richardson*, No. 95–0501-CR, unpublished slip op. (Wis. Ct. App. Jan. 19, 1996), which reversed the judgment of the Circuit Court for Milwaukee County, Stanley A. Miller, Judge. A jury found the defendant-appellant, Dennis L. Richardson, guilty of five counts of second degree sexual assault of a child and one count of false imprisonment. The court of appeals concluded that the circuit court had erroneously exercised its discretion in granting the prosecution's motion in limine, which prevented Richardson from presenting a "frame-up" defense. The court of appeals reversed the judgment of conviction and remanded for a new trial. We reverse the decision of the court of appeals.

¶ 2. On review, we consider (1) whether the "legitimate tendency" test set forth in *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984), should be adopted for determining the admissibility of frame-up defense evidence, (2) whether Richardson's frame-up evidence was relevant pursuant to Wis. Stat. § 904.02 (1995–96)[1] and Wis. Stat. § 904.01,[2] and (3) whether the frame-up evidence should have been

---

[1] Unless otherwise indicated, all future statutory references are to the 1995–96 volume. Wis. Stat. § 904.02 provides:

> **904.02 Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the State of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

[2] Wis. Stat. § 904.01 states:

> **904.01 Definition of "relevant evidence".** "Relevant evidence" means evidence having any tendency to make the existence of any

excluded under Wis. Stat. § 904.03[3] because the probative value of the evidence was substantially outweighed by the dangers of confusion of the issues and misleading the jury, and by considerations of undue delay and waste of time.[4] We conclude that

fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[3] Wis. Stat. § 904.03 states:

**904.03   Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[4] It is unclear whether the circuit court granted the State's motion *in limine* to exclude Richardson's frame-up evidence because it found that the evidence was not relevant or because the probative value of the evidence was substantially outweighed, or both. In its ruling on the State's motion in limine, the circuit court stated:

I think there is some evidentiary issues around number 4 and around number 5. I don't think it's relevance. I don't think the probative value of allowing that testimony in, as you have described it to me, would be outweighed by both. It's unreliable, and I don't think it would be particularly illuminating for the jury.

The court of appeals apparently concluded that the circuit court based its exclusion of the frame-up evidence on a finding that the evidence was not relevant:

Because the trial court incorrectly decided that the testimony was not relevant, however, the parties did not fully address the considerations inherent in § 904.03 nor did the court exercise the discretion its application requires.

*Richardson*, unpublished slip op. at 5. We are unable to determine the basis for the circuit court's ruling. Thus, we must make an independent determination of whether there were appropriate grounds to exclude the evidence. *State v. Pharr*, 115

there is no need to adopt the "legitimate tendency" test for admission of frame-up defense evidence, that the frame-up evidence is relevant pursuant to § 904.02 and § 904.01, and that the circuit court properly excluded the evidence under § 904.03 because the probative value of the evidence was substantially outweighed by the dangers of confusion of the issues and misleading the jury and by considerations of undue delay and waste of time.

¶ 3.   The relevant facts are not in dispute. On December 9, 1993, Richardson was charged in Milwaukee County Circuit Court with the December 4, 1993, sexual assault of fourteen-year-old Nicole K. The amended information charged Richardson with five counts of second-degree sexual assault and one count of false imprisonment.

¶ 4.   Before trial, the State filed a motion in limine. The motion in limine sought to exclude from evidence the telephone call from Richardson's estranged wife, Cindee Richardson, to Richardson's divorce attorney, in which Cindee Richardson accused Richardson of having sex with a fourteen year old two days prior to the assault of Nicole K. The State also sought to exclude any reference to the fact that Rich-

Wis. 2d 334, 343, 340 N.W.2d 498 (1983) ("where the trial court fails to set forth its reasoning in exercising its discretion to admit evidence, the appellate court should independently review the record to determine whether it provides a basis for the trial court's exercise of discretion."); *Hammen v. State*, 87 Wis. 2d 791, 800, 275 N.W.2d 709 (1979) ("this court will uphold a discretionary decision of the trial court if the record contains facts which would support the trial court's decision had it fully exercised its discretion."); *see also State v. Peters*, 192 Wis. 2d 674, 696, 534 N.W.2d 867 (Ct. App. 1995); *State v. Holt*, 128 Wis. 2d 110, 124–25, 382 N.W.2d 679 (1985).

ardson had obtained a restraining order against Cindee on the ground that the evidence was not relevant.[5]

¶ 5. At the hearing on the motion in limine, it was established that at the time of the sexual assault Richardson and his estranged wife, Cindee Richardson, were in the process of divorcing and were in a dispute over the custody of their children. Richardson had obtained a restraining order on December 2, 1993, barring Cindee Richardson from seeing the couple's children.

¶ 6. Richardson's proposed theory of defense was that his estranged wife was "framing" him for this sexual assault because he had filed for divorce and had obtained a restraining order. Richardson claimed that Cindee Richardson had told his divorce attorney on December 2, 1993, that Richardson had sex with a fourteen year old. Richardson asserted that this remark, made prior to the alleged sexual assault on December 4, 1993, was evidence of the attempted frame-up by Cindee Richardson.

---

[5] Richardson objected to the circuit court's issuance of orders requested in Items 4 and 5 in the motion in limine. Specifically, Items 4 and 5 sought:

4. An order excluding from evidence any statements made by the defendant's estranged wife, Cindee Richardson, to the defendant's attorney during the course of their divorce proceedings, including any allegations made by Cindee Richardson that the defendant had molested a young girl, on the ground that such evidence was hearsay. Wis. Stats. § 908.02.

5. An order excluding from evidence any reference to the fact that the defendant had sought and obtained a Child Abuse Injunction against his estranged wife, Cindee Richardson, during the pendency of their divorce, on the ground that such evidence was irrelevant. Wis. Stats. § 904.02.

¶ 7. Richardson further asserted that actions by Nicole K.'s mother, Mary K., supported his frame-up defense. He pointed out that on the day of the alleged assault Mary K. had talked to Cindee Richardson. In addition, Cindee Richardson gave Mary K. the telephone number of Richardson's attorney. Mary K. subsequently called Richardson's attorney to report the sexual assault. Mary K. denied making this telephone call until confronted with records from the telephone company.

¶ 8. In response to Richardson's arguments, the State pointed out the problems involved in admitting these items into evidence. The State asserted that the defense would be unable to produce admissible evidence in support of his theory of conspiracy to fabricate between Cindee Richardson, Mary K., and Nicole K. In addition, Cindee Richardson was not a witness in the trial or in any other way connected to the incident, and her motivations were not at issue in the sexual assault trial. The State also contended that admitting the estranged wife's statement would open the door to testimony from Cindee Richardson in which she would state her knowledge of at least three prior incidents of sexual contact between Richardson and young girls. To prevent the trial from degenerating into a trial of multiple collateral issues, the State urged the circuit court to grant its motion in limine to exclude the evidence relating to the defendant's frame-up evidence. The circuit court granted the State's motion in limine, and thereby excluded both Cindee Richardson's statement to the divorce attorney and evidence of Richardson's restraining order against his estranged wife.

¶ 9. At trial, it was established that Richardson had hired Nicole K., who lived on his block, to baby-sit for his two sons on December 4, 1993. According to

Nicole K.'s testimony, after she arrived at Richardson's house he showed her a bedroom and told her that she could sleep there if he was out late; he said he would sleep downstairs on the couch. Nicole K. also testified that she did go to sleep in the bedroom that night, and that sometime after she fell asleep Richardson got into bed with her. She further testified that he removed her bra and underwear and sexually assaulted her. After Richardson fell asleep, Nicole K. dressed and ran home, but left her bra and underwear behind.

¶ 10.    Nicole K.'s twelve-year-old sister, Christine K., testified that Nicole K. arrived home at 2:15 a.m. on December 5, 1993. Christine described Nicole K. as running in the house, screaming and crying and shaking. She stated that Nicole K. told her that Richardson had raped her. Christine ran to her mother, Mary K., woke her and told her what had happened. Mary K. then called the police and her husband.

¶ 11.    Mary K. testified about the emotional and physical trauma that Nicole K. experienced after the assault. In addition to weekly counseling, Nicole K. needed emergency room and other medical treatment for vaginal bleeding, burning caused by the healing hymenal lacerations, bruised rectal tissue, and sharp stomach pains. Medical treatments prescribed included special soaps for washing the injured genital areas, tranquilizers and sedatives.

¶ 12.    Sally Eiler, a nurse at the Sexual Assault Treatment Center, testified about the evidence taken from Nicole K. and the injuries to her vaginal area. She found two fresh tears in the hymen, one on the left and another on the right side of Nicole K.'s vaginal opening. Nurse Eiler also found a blood blister on the vaginal lip. Nurse Eiler testified that these injuries were con-

sistent with forceful trauma to the area and that pain would accompany the infliction of such injuries.

¶ 13.   City of Milwaukee Police Detective Dale Jackson was the officer who responded to Mary K.'s call to the police and who went to Richardson's residence. He found one dildo in the night-stand, another on the floor next to the bed, and a vibrator in the closet. He also found a pair of female underwear at the bottom of the bed next to the vibrator. In a clothes basket, underneath a robe that had been worn by Richardson when detective Jackson first arrived at the house, the detective found Nicole K.'s bra.

¶ 14.   Richardson's bed-sheets, the victim's shirt, her bicycle shorts and a vaginal swab were all positive for semen. The semen was tested and the blood and enzyme markers were found to be consistent with those of Richardson. Hairs that were consistent with Nicole K.'s hair and other hairs that were consistent with the defendant's hair were found in the bed-sheets.

¶ 15.   Richardson denied having any sexual contact with the victim and insisted that he slept on the couch downstairs that night. The jury, however, found Richardson guilty on all counts, and he was sentenced to a thirty-year prison term and consecutive probationary sentences. The circuit court denied Richardson's post-conviction motion for sentence reduction, and Richardson appealed from the judgment of conviction and the order denying sentence modification.

¶ 16.   In his appeal, Richardson argued that the circuit court had erroneously ruled on the motion in limine, thereby precluding him from presenting evidence of a conspiracy to frame him for the sexual assault. The court of appeals agreed with Richardson in concluding that the circuit court had erroneously exercised its discretion in excluding the proffered testi-

703

mony. The appellate court reversed Richardson's conviction and remanded to the circuit court for a new trial. The State petitioned for review and we granted the petition on May 7, 1996.

## I.

¶ 17. The first issue that we consider is whether the "legitimate tendency" test set forth in *Denny* should be adopted for determining the admissibility of frame-up defense evidence. In *Denny*, the defendant was convicted of first-degree murder following a jury trial. The defendant argued that he was denied his constitutional right to present a defense when the circuit court refused to allow evidence suggesting that any one of a number of third parties had motive and opportunity to murder the victim. *Id.* at 617. The circuit court ruled that such evidence was irrelevant.

¶ 18. The court of appeals in *Denny* affirmed the decision of the circuit court, but adopted a legitimate tendency test for allowing the introduction of third-party defense evidence. The *Denny* court stated:

> In other words, there must be a "legitimate tendency" that the third person could have committed the crime. . . . The "legitimate tendency" test asks whether the proffered evidence is so remote in time, place or circumstances that a direct connection cannot be made between the third person and the crime. Thus, as long as motive and opportunity have been shown and as long as there is also some evidence to directly connect a third person to the crime charged which is not remote in time, place or circumstances, the evidence should be admissible.

*Id.* at 623–24 (citation omitted). The State argues that this legitimate tendency test should be adopted in this case for evidence of frame-up defenses. The State asserts that the legitimate tendency test would ensure that the jury's attention is not diverted to collateral issues.

¶ 19.  We see no reason to adopt the legitimate tendency test. Richardson's proposed defense alleged that the victim was lying in an effort to frame him, not that someone else had committed the crime. Thus, *Denny* is not applicable to this case. In addition, we believe that, when properly applied, Wisconsin's existing rules of evidence ensure that a the jury is not confused and that the attention of jurors is not diverted to collateral issues. As there is neither a legal basis nor a compelling reason to apply the legitimate tendency test under the circumstances of this case, we hold that the legitimate tendency test is not applicable to the introduction of frame-up evidence.[6]

## II.

¶ 20.  The next issue that we consider is whether Richardson's frame-up evidence should have been excluded because it was not relevant. Evidence that is relevant is generally admissible. Wis. Stat. § 904.02. Relevant evidence is evidence that has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable. Wis. Stat. § 904.01. Thus, we must determine (1)

---

[6] We do not consider whether the "legitimate tendency" test is an appropriate standard for the introduction of third-party defense evidence.

whether the frame-up evidence concerned a fact of consequence to the determination of the action, and (2) if it did concern such a fact whether it made the existence of that fact more or less probable.

¶ 21.　Elements of the charge are certainly facts of consequence to the determination of the action. Richardson was charged and convicted of five counts of second degree sexual assault of a child pursuant to Wis. Stat. § 948.02(2)[7] and one count of false imprisonment pursuant to Wis. Stat. § 940.30.[8] The elements of the sexual assault charge include having sexual contact with a person who has not reached the age of sixteen. The false imprisonment charge is composed of the intentional confinement or restraint of another without that person's consent.

¶ 22.　The premise for the proffered frame-up evidence was that Cindee Richardson, Nicole K., and Mary K. had conspired to fabricate the crime. Thus, the proffered evidence was intended to suggest that Richardson did not engage in sexual contact with Nicole K. and that he had not confined or restrained her. This evidence would have directly pertained to the elements of the charges and thus concerned a fact of consequence to the determination of this action.

¶ 23.　We must next determine whether the proffered frame-up evidence would have had any tendency

---

[7] Wis. Stat. § 948.02(2) provides:

(2)　SECOND DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony.

[8] Wis. Stat. § 940.30 provides:

940.30　**False imprisonment.** Whoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class E felony.

to make the consequential fact more or less probable. If the evidence would have had any tendency to make it less probable that Richardson sexually assaulted and falsely imprisoned Nicole K., then it should not have been excluded by the circuit court on the basis of relevancy. The "any tendency" standard reflects the broad definition of relevancy and the resulting low threshold for the introduction of evidence that the relevancy definition creates.

¶ 24.   The intention to broadly define relevance is illustrated by the Judicial Council note to Wis. Stat. § 904.02: "[t]he criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry." Judicial Council Committee's Note, W.S.A. 904.01 (quoting *Oseman v. State*, 32 Wis. 2d 523, 526, 145 N.W.2d 766 (1966)). This court has also recognized that relevance is defined broadly. *State v. Hungerford*, 84 Wis. 2d 236, 257, 267 N.W.2d 258 (1978), ("[t]he Judicial Council Committee's Note to sec. 904.01 indicates that the rule was intended to broadly define relevancy."); *State v. Alles*, 106 Wis. 2d 368, 381 n. 4, 316 N.W.2d 378 (1982) ("[W]hile the evidence introduced at trial may not have been the most probative evidence available, it was nevertheless relevant."). Thus, there is a strong presumption that proffered evidence is relevant.

¶ 25.   In light of the broad definition of relevance, we believe that the frame-up evidence would have had some tendency, however small, to make it less probable that Richardson sexually assaulted and falsely imprisoned Nicole K. In other words, the frame-up evidence would have had some tendency to make the existence of a fact that is of consequence to the determination of the

action less probable. Thus, we hold that the circuit court should have ruled that the frame-up evidence was relevant. However, not all evidence that is relevant should be admitted at trial.

### III.

¶ 26. The last issue that we consider is whether the frame-up evidence should have been excluded pursuant to Wis. Stat. § 904.03 because the probative value of the evidence was substantially outweighed by the dangers of confusion of the issues and misleading the jury and by considerations of undue delay and waste of time. Evidence that is relevant and otherwise admissible may nevertheless be excluded under Wis. Stat. § 904.03. The circuit court may exclude such evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. § 904.03.

¶ 27. Accordingly, we must first consider the relative probative value of the frame-up evidence. The value of the proffered evidence is slight. For the evidence to be compelling the jury must (1) believe that the ex-wife, the mother of the Nicole K., and Nicole K. all conspired to falsely incriminate Richardson, (2) overlook the physical evidence of the crime found at Richardson's house, (3) disregard the fact the semen consistent with Richardson's was found on Nicole K.'s shirt, shorts and a vaginal swab, and (4) believe that the injuries to Nicole K. were self-inflicted. Based on these factors, we believe that, although relevant, the frame-up evidence is of little probative value.

¶ 28. Next, we must determine whether that probative value is substantially outweighed by the dangers of confusion of the issues or misleading the jury or by considerations of undue delay and waste of time. Because we have determined that the probative value of the frame-up evidence is relatively slight, it follows that the level of dangers and considerations needed to substantially outweigh that probative value is correspondingly lower.

¶ 29. Allowing the introduction of the frame-up evidence would have lead to a substantial waste of time on collateral issues. These collateral issues included whether Cindee Richardson made a remark to Richardson's divorce attorney about a sexual assault that Richardson allegedly committed, and whether the remark, if made, referred to a previous sexual assault of a fourteen year old by Richardson. This could have also led to the introduction of the other acts evidence, previously held as inadmissible, to rebut the suggestion that the remark was fabricated. The trial would likely have deteriorated into an airing of past disputes and problems between Richardson and his estranged wife. Such a diversion would have distracted the jury from the central issue of Richardson's guilt or innocence. Introduction of the frame-up evidence also presented the danger of confusing the jury's consideration of other evidence with a higher probative value. We believe these factors would have substantially outweighed the slight probative value of the frame-up evidence and that the evidence could have been excluded under Wis. Stat. § 904.03. Thus, we hold that the circuit court did not erroneously exercise its discretion when it excluded the frame-up evidence.

*By the Court.*—The decision of the court of appeals is reversed.