COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP744-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF2820

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LATWAIN OSHEA WILLIAMS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1     PER CURIAM. Latwain Oshea Williams appeals the judgment convicting him of three counts of first-degree recklessly endangering safety with use of a dangerous weapon as a repeater and as a party to a crime, one count of possession of a firearm by a felon as a repeater, three counts of second-degree recklessly endangering safety as a repeater, and one count of fleeing or eluding an officer. He also appeals the order denying his postconviction motion. Williams argues that his right to a speedy trial was violated, his trial counsel was ineffective, and the circuit court erroneously exercised its discretion when it overruled his trial counsel's objection to a victim's testimony. We disagree and affirm.

## I. BACKGROUND

¶2     On June 10, 2017, Williams, along with his two co-defendants, Stacy Watkins and Oscar Rash, traveled through residential Milwaukee neighborhoods committing a number of crimes. The complaint alleged that they shot at two different vehicles, one of which was an undercover police vehicle, and they shot at a police officer before engaging in a high speed car chase with police. The vehicle Williams was in ultimately crashed into another car. The State charged the three defendants together.

¶3     Williams entered a speedy trial demand on July 31, 2017. The joint Williams/Watkins trial did not occur until November of 2019. Rash was no longer a co-defendant because he accepted a plea offer from the State and pled guilty to

one count of felon in possession of a firearm. In exchange, he agreed to testify against Williams and Watkins. The jury additionally heard testimony from victims, police officers, eyewitnesses, Williams, and others. The jury found Williams guilty on all counts.

¶4 Williams subsequently filed a postconviction motion seeking to have the charges against him dismissed or, alternatively, a new trial. As grounds for his request, he alleged that: (1) the twenty-nine month delay between the filing of his complaint and his trial violated his right to a speedy trial; (2) trial counsel was ineffective for not moving to sever his case from Watkins' case on speedy trial grounds and for not requesting two jury instructions that purportedly would have undercut the credibility of Rash's testimony; and (3) the circuit court erroneously admitted evidence of a victim's post-incident personal difficulties.

¶5 Williams alleged that due to the delay in conducting the trial, two witnesses who would have assisted in his defense were unavailable. He averred that Kimotsha Perry would have corroborated his defense, which was that he was not in the vehicle at the time of the shootings, but she passed away at some point prior to trial. According to Williams, the second witness, Leesha T. Love, witnessed the first shooting that occurred and her description of the shooter did not match Williams. However, by the time of trial, Love's whereabouts were unknown to Williams.

¶6      The circuit court denied the evidentiary issue and the jury instruction issue without a hearing.  The court concluded that the two sought after jury instructions, WIS JI—CRIMINAL 245 and WIS JI—CRIMINAL 246, were not necessary or appropriate given the facts of the case and that Williams' argument that he was prejudiced by trial counsel's alleged shortcoming in this regard was undeveloped and conclusory.[1]  The court also found that it did not err when it overruled trial counsel's objection to the victim's testimony about her post-

---

[1] The "Testimony of Accomplices" jury instruction, WIS JI—CRIMINAL 245, provides:

> You have heard testimony from (name accomplice) who stated that (he) (she) was involved in the crime charged against the defendant.  You should consider this testimony with caution and great care, giving it the weight you believe it is entitled to receive.  You should not base a verdict of guilty upon it alone, unless after consideration of all the evidence you are satisfied beyond a reasonable doubt that the defendant is guilty.

The "Testimony of a Witness Granted Immunity or Other Concessions" jury instruction, WIS JI—CRIMINAL 246, provides:

> You have heard testimony from (name of witness) who has received [immunity] [concessions].
>
> ["Immunity" means that (name of witness)'s testimony and evidence derived from that testimony cannot be used in a later criminal prosecution against (name of witness).]
>
> [(Describe concessions)]
>
> This witness, like any other witness, may be prosecuted for testifying falsely.
>
> You should consider whether receiving [immunity] [concessions] affected the testimony and give the testimony the weight you believe it is entitled to receive.

4

incident personal difficulties. The court further concluded that Williams' claim in his regard was conclusory and insufficient to warrant relief.

¶7 The circuit court did, however, grant a hearing on the two intertwined speedy trial issues. Following the testimony of trial counsel and Williams, the court denied the motion.

## II. DISCUSSION

¶8 Williams renews his postconviction claims on appeal. This court will review each one in turn.

### A. *Williams' speedy trial argument is undeveloped.*

¶9 Williams argues that the circuit court erred when it failed to honor his right to a speedy trial. He claims there were two favorable witnesses who would have been available to offer testimony prior to a number of the adjournments. One of those witnesses died before Williams went to trial and the other witness's whereabouts were unknown at the time of trial, due to the delay.

¶10 Both the Sixth Amendment to the United States Constitution and article I, section 7 of Wisconsin's Constitution protect a defendant's right to a speedy trial. We independently determine the constitutional question of whether

Williams has been denied his right to a speedy trial.[2] *See State v. Leighton*, 2000 WI App 156, ¶5, 237 Wis. 2d 709, 616 N.W.2d 126. We review with deference, however, the circuit court's underlying findings of historical facts. *Id.*

¶11 There are four considerations to balance when determining whether a defendant's right to a speedy trial has been violated: "(1) the length of the delay; (2) the reason for the delay, i.e., whether the government or the defendant is more to blame for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the delay resulted in any prejudice to the defendant." *Id.*, ¶6.

> "The right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case. Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily."

*State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324 (citation omitted). Where a violation is established, the sole remedy is dismissal of the charges. *Id.*

¶12 We conclude that Williams' speedy trial argument is undeveloped. First, the entire argument section of Williams' brief is largely devoid of record

---

[2] In his briefing, Williams begins by referencing the speedy trial statute, WIS. STAT. § 971.10. The State contends, and Williams does not refute in his reply brief, that the speedy trial statute does not define the contours of the constitutional right, *Day v. State*, 60 Wis. 2d 742, 744, 211 N.W.2d 466 (1973), and a violation of the speedy trial statute results in only release on bond pending trial—not dismissal. *See* § 971.10(4).

citations. Moreover, Williams' briefing falls short in terms of "identify[ing] the reason for each particular portion of the delay and accord[ing] different treatment to each category of reasons." *See Urdahl*, 286 Wis. 2d 476, ¶26.

¶13 We have explained that when analyzing reasons for delay:

> A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily. On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted. Finally, if the delay is caused by the defendant, it is not counted.

*Id.* (citations omitted.) We will not do Williams' work for him in terms of assessing the reasons for the various delays and the respective weight that applies. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments" for the parties.). Consequently, we need not decide this issue. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) ("We will not decide issues that are not, or inadequately, briefed.").

### B. *Williams' trial counsel was not ineffective.*

¶14 "To prevail on an ineffective assistance claim, a defendant must prove both that counsel performed deficiently and that the deficient performance prejudiced the defense." *See State v. Prescott*, 2012 WI App 136, ¶11, 345 Wis. 2d 313, 825 N.W.2d 515. Ineffective assistance claims present mixed

questions of law and fact. *State v. Jenkins*, 2014 WI 59, ¶38, 355 Wis. 2d 180, 848 N.W.2d 786. We "will uphold the circuit court's findings of fact, including the circumstances of the case and the counsel's conduct and strategy, unless they are clearly erroneous." *See id.* Whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law, which we review *de novo*. *See Prescott*, 345 Wis. 2d 313, ¶11.

### (1) Counsel was not ineffective for not moving to sever Williams' trial from Watkins' trial.

¶15 Williams argues trial counsel preformed deficiently because he failed to request that Williams' trial be severed from Watkins' trial. According to Williams, justice required that his trial be severed from that Watkins' trial in order to "preserve his speedy trial rights." He additionally asserts that if his trial had been severed from Watkins' trial, "there would also be a probability that the dead/missing witnesses could have testified on defendant's behalf."

¶16 Prior to trial, Watkins filed a motion to sever based on prejudice to Watkins' case due to potential confusion of the evidence between the two defendants, specifically as to Watkins' alibi defense.[3] The State objected to that severance request because "[a]ll of the witnesses are the same, all of the incidents that they're alleged to have committed are the same." The State argued that "this

---

[3] The Honorable T. Christopher Dee ruled on Watkins' motion to sever.

is appropriately joined and appropriately tried together." The circuit court agreed with that assessment. It denied the severance because "[t]here's too much commonality here to overlook."

¶17 In denying Williams' postconviction motion, the circuit court reaffirmed this ruling. The court explained that even if trial counsel had filed a severance motion, it would have been denied. The court stated that Williams and Watkins "had completely the same witnesses." The court further noted: "You were codefendants. That's the way it was, and that's how you were charged…. Everything was the same. These cases were not going to be severed, and we have that finding … as to Mr. Watkins' severance motion to support my belief in that vein." Accordingly, the court concluded "even if [trial counsel] had filed a severance motion, the evidence before this [c]ourt is that it would have been denied, and the cases would have been tried together."

¶18 The circuit court was explicit that no severance motion would be granted; consequently, Williams' trial counsel was not ineffective for failing to move to sever on speedy trial grounds. Williams's trial counsel cannot be deemed to have performed deficiently for failing to raise a meritless motion. *See State v. Jacobsen*, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365 ("An attorney does not perform deficiently by failing to make a losing argument."). Because trial counsel's performance was not deficient, we need not analyze prejudice. *See State v. Floyd*, 2016 WI App 64, ¶22, 371 Wis. 2d 404, 885 N.W.2d 156 ("If the

defendant fails to prove either prong, we need not address whether the other prong was satisfied.").

### (2) Counsel was not ineffective for not seeking jury instructions related to Rash's testimony.

¶19    Williams additional argues that trial counsel was ineffective for not seeking WIS JI—CRIMINAL 245 and WIS JI—CRIMINAL 246 related to Rash's testimony.  He argues that trial counsel was prejudicially ineffective for failing to request both instructions, which would have specifically directed the jury to consider the credibility of Rash's testimony with caution and great care and to consider "the massive concessions" that were provided in exchange for his testimony.  Williams emphasizes that Rash was originally charged with crimes that had prison exposure of approximately 134 years, but received a concession from the State that reduced his exposure to ten years.

¶20    The circuit court denied Williams' claim in this regard without holding a hearing.  Although a defendant alleging ineffective assistance of counsel must seek to preserve counsel's testimony in a postconviction hearing, *see State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979), the defendant is not automatically entitled to such a hearing, *see State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996).  Rather, the circuit court is required to hold an evidentiary hearing only if the defendant has alleged, within the four corners of the postconviction motion, "sufficient material facts that, if true, would entitle the

10

defendant to relief." ***State v. Allen***, 2004 WI 106, ¶¶14, 23, 274 Wis. 2d 568, 682 N.W.2d 433. A defendant's postconviction motion will normally be sufficient if it includes allegations that establish "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." *See **id.***, ¶23. Whether a defendant's motion alleges sufficient material facts to entitle the defendant to relief is a question of law that we review *de novo*. *See **id.***, ¶9. If a defendant's postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court, in its discretion, may deny relief without a hearing. *See **id.***, ¶¶9, 34. We review a circuit court's discretionary decision with deference. *See **id.***, ¶9.

¶21 Williams' postconviction motion relative to this claim was inadequate. We agree with the circuit court that Williams "failed to set forth a developed argument that he was prejudiced by counsel's failure to request these instructions." He offers little beyond the conclusory assertion that "[t]elling the jury to consider [Rash's] massive concessions to testify and … take his testimony with great care and caution would have been legally material and in all[] likelihood impacted the jury verdict." The circuit court properly denied Williams' claim without a hearing.

### (3) *The circuit court properly exercised its discretion when it overruled trial counsel's objection to a victim's testimony.*

¶22    Lastly, Williams argues that the circuit court erred when it overruled trial counsel's objection to victim L.H.'s testimony relating to post-incident personal difficulties. He contends that this irrelevant and highly inflammatory evidence "serve[d] only to inflame the jury about the mental and financial hardships of victims." He contends that none of L.H.'s testimony about her subsequent life troubles addressed the elements required to prove second-degree recklessly endangering safety.

¶23    "The question of admissibility of evidence generally lies within the [circuit] court's discretion." *State v. Dukes*, 2007 WI App 175, ¶26, 303 Wis. 2d 208, 736 N.W.2d 515. A circuit court properly exercises its discretion if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399 (citation omitted). Moreover, "[e]ven if a circuit court fails to set forth the basis for its ruling, [this court] will nonetheless independently 'review the record to determine whether it provides an appropriate basis for the circuit court's decision.'" *Id.* (citation omitted).

¶24 During the car chase with police, Williams crashed into the car L.H. was driving. The State charged Williams with three counts of second-degree recklessly endangering safety relating to L.H. and her two passengers.

¶25 At trial, L.H. testified that she suffered head, neck, back, leg, and face injuries during the crash. After testifying to her physical injuries, the prosecutor asked L.H. the following questions:

> [Prosecutor:] [L.H.], how has your life changed after the accident?
>
> [Trial Counsel]: Objection. Relevance.
>
> [Prosecutor:] Judge, it goes to the second-degree recklessly endangering safety part. One of the elements I have to prove is great bodily harm and, obviously, you know, what harm has resulted as a result of this incident, and it is very relevant to this case.
>
> The Court: Overruled.
>
> ….
>
> [Prosecutor:] So, [L.H.], tell me how your life's been affected by this incident.
>
> [L.H.]: I own my own drug screen and fingerprint business that I lost because I could not work for a couple of months—well, at least six months after the accident. I lost all my credit cards. My credit went bad. I filed bankruptcy. It tore my whole life up.
>
> [Prosecutor:] Because of the injuries you sustained?
>
> [L.H.:] Because off the injuries I sustained, and I could not work after the accident.
>
> [Prosecutor:] And the medical bills you had and things of that nature?

13

[L.H.:] Medical bills I had. They're suing, coming after me and trying to sue me for the ambulance bill, all that stuff. So it's very relevant.

[Prosecutor:] [L.H.], earlier we spoke—

[L.H.:] I'm still suffering right now two years later.

¶26 Williams contends that this testimony was irrelevant because "[t]he jury instruction on great bodily harm does not refer in any way to being sued, loss of a job, or financial struggles." The State submits that simply because the statute or the jury instruction do not make specific reference to the specific facts that L.H. testified to do not mean that the facts were irrelevant. Rather, the State contends that L.H.'s testimony made it more provable that Williams' conduct created a risk of great bodily harm, a definitional element of second-degree recklessly endangering safety.

¶27 We agree with the State's analysis that the testimony was relevant and not substantially and unfairly prejudicial. Evidence that is relevant is generally admissible at trial. *State v. Richardson*, 210 Wis. 2d 694, 705, 563 N.W.2d 899 (1997); *see also* WIS. STAT. § 904.02. "Relevant evidence is evidence that has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable." *Richardson*, 210 Wis. 2d at 705; *see also* WIS. STAT. § 904.01.

¶28 In order to prove that Williams was guilty of second-degree recklessly endangering safety, the State needed to prove that Williams "recklessly

14

endanger[ed] another's safety." WIS. STAT. § 941.30(2). Criminally reckless conduct is conduct that "creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk." WIS. STAT. § 939.24(1). "'Great bodily harm' means serious bodily injury. Injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ, or other serious bodily injury is great bodily harm." WIS JI—CRIMINAL 1347 (brackets omitted).

¶29 When trial counsel objected, the State explained that its question regarding the effect of the accident on L.H.'s life went to the "harm [that] has resulted as a result of this incident." The testimony put into context the extent of L.H.'s injuries in a way that comported with the definition of great bodily harm. LH's testimony made it more probable that Williams' conduct created more than merely a risk of great bodily harm—it in fact did cause such harm. The circuit court properly exercised its discretion when it overruled trial counsel's objection. LH's testimony was not so "inflammatory" as to require its exclusion. *See* WIS. STAT. § 904.03 (providing that "[a]lthough relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice" (emphasis added); *see also* **State v. Payano**, 2009 WI 86, ¶80, 320 Wis. 2d 348, 768 N.W.2d 832 (noting that "[t]he term 'substantially' indicates that *if the*

*probative value is close or equal to its unfair prejudicial effect, the evidence must be admitted*" (citation omitted; emphasis in ***Payano***)).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.