COURT OF APPEALS
DECISION
DATED AND FILED

November 15, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP542-CR**

Cir. Ct. No. 2017CF626

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DOMINQUE I. KNIGHT,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Racine County: MARK F. NIELSEN, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Dominque I. Knight appeals from a judgment convicting him of first-degree intentional homicide and of possession of a firearm by a convicted felon. Knight also appeals from circuit court orders denying his two postconviction motions seeking a new trial—the first alleged ineffective assistance of trial counsel and the second alleged newly discovered evidence. We conclude Knight is not entitled to relief on any of his claims. Accordingly, we affirm.

## BACKGROUND

¶2     Knight was convicted of first-degree intentional homicide by use of a dangerous weapon and being a felon in possession of a firearm after a jury found that Knight intentionally shot and killed the victim, Harry Canady. Evidence was presented at trial that on the night that Harry[1] was killed, police located an individual, Donte Shannon, running away from the scene of the homicide. Shannon told police that he had driven Knight to the Canady house and that Shannon saw Knight shoot Harry on the Canady's front porch that night. Shannon passed away before the trial and was thereby unable to testify against Knight.

¶3     Before the trial, the State brought a motion to present evidence of an ongoing dispute over drugs and money between Knight and members of the Canady family. As relevant to this appeal, the State sought to present the following evidence:

(1) A few weeks prior to Harry's murder, Knight and an individual named Roger Gardner gave Harry's brother, David Canady, $1,000 to buy them drugs. David was later arrested. David's uncle, Larry Canady, posted

---

[1] Several individuals with the surname "Canady" are relevant to the facts in this appeal. We generally refer to them by their first names to avoid potential confusion.

2

$1,000 cash to bond David out. Harry provided Larry with $1,000 cash for David's bond, and Knight and Gardner never received the drugs they sought to buy.

(2) A couple days after the incidents described above, three black males came to Larry's home looking for David and Harry. At least one of the individuals was armed, and all three actually may have been carrying firearms.

The State argued the evidence it sought to admit ("the dispute evidence") was admissible as panorama evidence demonstrating Knight's "motive and intent" to kill Harry and/or as other acts evidence establishing "the context of the relationship, knowledge, absence of mistake or accident." The State submitted that the dispute evidence was necessary to paint a complete picture for the jury of the circumstances surrounding the homicide.

¶4 Knight disagreed. He argued the dispute evidence was more prejudicial than probative. The circuit court agreed with the State, observing that regardless of whether it was considered panorama evidence or other acts evidence, the dispute evidence was admissible at trial because it went to motive and intent and was corroborative evidence of Knight's role in Harry's murder.

¶5 At trial, the State presented evidence in support of Knight's guilt, including the following: (1) the dispute evidence establishing that Knight had a motive to kill Harry after Harry's brother David took $1,000 from Knight for drugs but never purchased the drugs for Knight, presumably because Harry had provided the $1,000 as David's bail money; (2) evidence that Knight called one of his cousins on the day of the shooting and warned the cousin to keep his son away from Harry's residence that day; and (3) testimony from jailhouse informant Jonathan Sparks,

who was housed in a jail pod near Knight after Harry's murder, that Knight had confessed to killing Harry. After three days of trial, the jury found Knight guilty on both charges against him.

¶6      For the first-degree intentional homicide, the circuit court sentenced Knight to life imprisonment with eligibility for release to extended supervision in thirty-five years. The court also imposed four years of initial confinement and four years of extended supervision for Knight's conviction as a felon in possession of a firearm.

¶7      Knight filed a motion for postconviction relief in the circuit court asserting that trial counsel was ineffective in four ways: (1) failing to move for a mistrial or make a motion to strike after the State failed to prove essential facts on which admission of the panorama or other acts evidence was predicated; (2) failing to call Roger Gardner as a defense witness;[2] (3) failing to obtain or present jail records undermining Jonathan Sparks' credibility; and (4) failing to object to a police investigator's testimony allegedly vouching for a Sparks' credibility.

¶8      Following a *Machner* hearing,[3] the circuit court denied Knight's postconviction motion. The court rejected Knight's claim that his trial counsel should have objected when the State allegedly failed to establish critical facts pertaining to the admissibility of the dispute evidence discussed above. The court determined that its initial analysis of the admissibility of the dispute evidence was accurate. The court further found that the State's questions at trial did not violate the court's pretrial ruling as to its admissibility. Regarding Knight's claim that trial

---

[2] During the hearing on its postconviction motion, defense counsel withdrew its objection to trial counsel's failure to call Gardner as a defense witness.

[3] *See State v. Machner*, 101 Wis. 2d 79, 303 N.W.2d 633 (1981).

counsel was deficient for failing to obtain additional jail records to prove that Sparks was lying, the court found the witness testimony to be "credible" and "detailed" on this topic. It found that jail records indicated Sparks and Knight were indeed housed at the jail during overlapping periods and rejected Knight's claims of deficient performance on this ground. Finally, the court rejected Knight's claim that trial counsel was ineffective in failing to object to the police investigator's testimony purportedly vouching for Sparks' credibility. It found trial counsel's decision not to object and "make a big deal of it" in front of the jury to be a "strategic" decision and found that perhaps the decision was "even right."

¶9      Knight then filed a supplemental postconviction motion in the circuit court. Knight argued that he had newly discovered evidence that entitled him to a new trial. Specifically, Knight asserted that he received a recorded jail call after his trial from an individual named Donelle Jones confronting Sparks about allegedly lying during his testimony in Knight's trial. Knight argued that in this call, Sparks "tacitly–if not expressly–admits that he lied." Knight also asserted that Sparks confessed to another inmate, Antrone Lewis, that Sparks had lied during Knight's trial.

¶10     The circuit court held an evidentiary hearing where Jones, Lewis, and Sparks all testified. The court subsequently entered a written order denying Knight relief. In its decision, the court noted the State conceded the evidence was discovered after conviction and Knight was not negligent in seeking the evidence. The dispute, the court recognized, thus came down to whether the evidence was material to an issue at trial and, if so, whether it was merely cumulative. With respect to Jones' recorded phone call, the court determined that what Sparks said during the call did not constitute an "admission" by Sparks, and that Knight failed to prove that it constituted newly discovered evidence because it was not material.

5

Regarding Sparks' supposed confession to Lewis, the court observed that "[n]ot one other witness has come forward to corroborate [Lewis'] account[,]" and found Lewis to be not credible. The court thus concluded that Knight "failed to prove by evidence that is clear, satisfactory and convincing that there is [n]ewly [d]iscovered [e]vidence in this case," and it denied his supplemental postconviction motion. Knight appeals.

## DISCUSSION

¶11 Knight raises three issues on appeal. First, he argues that the circuit court erroneously exercised its discretion in granting the State's motion to introduce the dispute evidence at trial as panorama evidence or other acts evidence. Next, he argues that the court erred in denying his initial postconviction motion for a new trial because trial counsel provided ineffective assistance. Finally, he argues that the court erroneously exercised its discretion in denying his supplemental postconviction motion for a new trial based on newly discovered evidence. We address each issue in turn below.

*Panorama Evidence*

¶12 "The question of admissibility of evidence generally lies within the trial court's discretion." *State v. Dukes*, 2007 WI App 175, ¶26, 303 Wis. 2d 208, 736 N.W.2d 515. A circuit court properly exercises its discretion if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process[,] and reached a conclusion that a reasonable judge could reach." *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d 568, 797 N.W.2d 399 (citation omitted).

¶13 WISCONSIN STAT. § 904.04(2) provides that evidence of other crimes, wrongs, or acts is admissible to prove intent, but not admissible to prove the

6

character of an individual in an effort to show action in conformity therewith. If the evidence is relevant and admissible under § 904.04(2), the circuit court must then decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, pursuant to WIS. STAT. § 904.03. ***State v. Kuntz***, 160 Wis. 2d 722, 746, 467 N.W.2d 531 (1991). Section 904.03 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶14 This court has previously recognized that "'simply because an act can be factually classified as "different"—in time, place and, perhaps, manner than the act complained of—that different act is not necessarily 'other acts' evidence in the eyes of the law.'" ***Dukes***, 303 Wis. 2d 208, ¶28 (citation omitted). To that end, evidence is not considered to be other acts evidence "if it is part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." ***Id.***

¶15 Knight argues that the circuit court erroneously exercised its discretion in allowing the dispute evidence, which, as stated above, was evidence related to the ongoing dispute between Knight and the Canadys over drugs and money. Because Knight asserts that the probative value of the dispute evidence was outweighed by its prejudicial effect, he "submits that no reasonable judge, using a demonstrative rational process, would have concluded that the other acts evidence was admissible." The State argues that the court properly exercised its discretion in admitting the evidence under both other-acts and panorama-evidence analyses.

7

¶16 We agree with the State—evidence surrounding the ongoing dispute between Knight and the Canadys was all "part of the panorama of evidence needed to completely describe the crime that occurred and is ... inextricably intertwined with the crime." *See id.* "The evidence involved the relationship between the principal actors," **State v. Jensen**, 2011 WI App 3, ¶85, 331 Wis. 2d 440, 794 N.W.2d 482 (2010), and explained the context of Knight's crimes in terms of the ongoing dispute and strained relationship between Knight and the Canady family.

¶17 Evidence that is relevant is generally admissible at trial. **State v. Richardson**, 210 Wis. 2d 694, 705, 563 N.W.2d 899 (1997); *see also* WIS. STAT. § 904.02. "Relevant evidence is evidence that has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable." **Richardson**, 210 Wis. 2d at 705; *see also* WIS. STAT. § 904.01. In order to prove Knight guilty of first-degree intentional homicide, the State needed to prove that Knight caused Harry's death. *See* WIS. STAT. § 940.01(1)(a); WIS JI—CRIMINAL 1010. The State also needed to prove that Knight intended to kill Harry. *See id.* "Intent to kill must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon intent." WIS JI—CRIMINAL 1010. Without the background information about the dispute related to the drugs and money, as the circuit court explained, "the jury [would have been] left to wonder why [Knight] would shoot down this man for apparently no reason." Although it was undoubtedly prejudicial, it was necessary

panorama evidence, without which the State would likely have been unable to establish the intent element of the first-degree homicide charge.[4]

¶18     The dispute evidence also was not so "inflammatory" as to require its exclusion. *See* WIS. STAT. § 904.03 (providing that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"); *see also* **State v. Payano**, 2009 WI 86, ¶80, 320 Wis. 2d 348, 768 N.W.2d 832 (noting "[t]he term 'substantially' indicates that if the probative value is close or equal to its unfair prejudicial effect, the evidence must be admitted." (citation omitted)).

¶19     All evidence is subject to relevancy and prejudice analyses. WIS. STAT. §§ 904.01, 904.03. Here, the circuit court assessed the relevancy and prejudicial effect of this evidence when it decided to allow it at trial. The court did not erroneously exercise its discretion in admitting the dispute evidence as panorama evidence. *See* **Jensen**, 331 Wis. 2d 440, ¶75.

---

[4] Knight argues in his reply brief that the circuit court erroneously exercised its discretion in allowing the dispute evidence because "the State failed to make any link between the other acts evidence involving David and Knight's intent or motive to kill Harry." Knight asserts that the evidence would have established a motive or intent to kill David, but did not establish any motive or intent as relates to Harry. Thus, he argues, the evidence was not probative or relevant and should have been excluded. We disagree.

For reasons discussed above, we conclude the evidence was relevant to provide context for the jury, and any argument that such testimony is not probative goes to the weight of that evidence, not its admissibility. As such, it was for the jury to determine the probative nature of the evidence of the history of Knight's relationship with the Canadys. The jury heard testimony regarding the dispute between Knight and David Canady, and it determined that the testimony provided sufficient evidence of Knight's motive and intent to kill David's brother Harry. We will not set aside factual findings unless clearly erroneous, and we give due regard to the opportunity of the fact-finder—in this case, the jury—to judge witness credibility. WIS. STAT. § 805.17(2).

*Ineffective Assistance of Trial Counsel*

¶20 Knight argues on appeal that his trial counsel was ineffective in the following three ways: (1) failing to move for a mistrial or make a motion to strike after the State failed to prove essential facts on which the other acts evidence admission was predicated; (2) failing to obtain or present jail records undermining Sparks' credibility; and (3) failing to object to the police investigator's testimony purportedly vouching for Sparks' credibility. After hearing evidence at the *Machner* hearing, the circuit court concluded otherwise. The court specifically found that Knight failed to establish deficient performance by counsel and, therefore, failed to establish ineffective assistance of counsel. As we now explain, we agree and conclude that the court did not err in determining that trial counsel's performance was not deficient.

¶21 To establish ineffective assistance of counsel, Knight must make a threshold showing that, when considering all the circumstances, his counsel performed deficiently by providing representation that fell below an objective standard of reasonableness. *See State v. Jenkins*, 2014 WI 59, ¶36, 355 Wis. 2d 180, 848 N.W.2d 786. Our review is highly deferential to the reasonableness of counsel's performance, and we make every effort to reconstruct the circumstances and evaluate counsel's conduct from his or her perspective at the time of the relevant decision. *See id.*

¶22 Applying these standards, we conclude that the circuit court did not err in finding that trial counsel was not deficient in deciding not to object to the panorama evidence as it came in at trial. Trial counsel testified that he did not object because the evidence did not come in improperly at trial. Moreover, trial counsel explained, the court had already ruled on its admissibility. In its ruling on the

postconviction motion, the court made an explicit finding that the State's questioning at trial did not violate its pretrial ruling, meaning that any objection by defense counsel to the panorama evidence would have been overruled.

¶23     Similarly, we uphold the circuit court's ruling that trial counsel was not deficient for failing to present records to undermine Sparks' testimony regarding when he and Knight were housed in various jail pods. There was no deficiency in failing to push the issue during Sparks' testimony, particularly considering trial counsel's strategy of suggesting to the jury that Sparks had access to Knight's discovery materials before Sparks testified against Knight and stressing to the jury that Sparks "couldn't be believed." In trial counsel's analysis, presenting the housing records at trial would have had no benefit in light of the strategic decision as to how to undermine Sparks' testimony. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

¶24     Moreover, the circuit court "found the witness [Sparks] to be credible on" the challenged topic and found that it was irrelevant to the issues in the case whether Sparks was incorrect about specific dates. Counsel's strategy to focus on Sparks' access to Knight's discovery and Sparks' credibility when he was seeking a better deal for his own homicide case does not fall below an objective standard of reasonableness. *See id.*; *see also Jenkins*, 355 Wis. 2d 180, ¶36.

¶25     Finally, it was not deficient performance for counsel to fail to object to the police investigator's testimony allegedly vouching for Sparks' credibility. This, too, was a strategic decision by trial counsel. Counsel explained at the postconviction hearing why he did not object to this testimony: "in the context it was said, I obviously didn't think it was vouching. I don't have that context in front

of me but if I felt that way, I obviously would have done that." Trial counsel also testified that he did not want to "highlight" the investigator's testimony that he was able to corroborate Sparks' information. As did the circuit court, we conclude that counsel's strategy in not wanting to highlight the investigator's testimony does not fall below an objective standard of reasonableness. *See **Jenkins***, 355 Wis. 2d 180, ¶36. Because trial counsel did not perform deficiently, Knight did not receive ineffective assistance of counsel entitling him to a new trial.

*Newly Discovered Evidence*

¶26    Finally, Knight argues that the circuit court erroneously exercised its discretion in failing to order a new trial based on what Knight asserts is newly discovered evidence. We disagree.

¶27    A defendant seeking a new trial on the basis of newly discovered evidence must establish, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking to discover it; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. ***State v. Vollbrecht***, 2012 WI App 90, ¶18, 344 Wis. 2d 69, 820 N.W.2d 443. We review a decision on whether to grant a new trial based on newly discovered evidence for an erroneous exercise of discretion. ***Id.***

¶28    Knight asks us to conclude that he is entitled to a new trial based on the recorded jail phone call between Sparks and Donelle Jones and the supposed conversation that Sparks had with Antrone Lewis. As it did before the circuit court, the State concedes that both Jones' phone call and Lewis' conversation were discovered after Knight's conviction and Knight was not negligent in seeking the evidence. However, the State takes issue with Knight's assertion that the evidence constitutes newly discovered evidence under the law because the State argues that

12

it is not material to any issue in the case. As we now explain, we agree with the State.

¶29 Simply put, Jones' phone call is not material because it is not credible evidence that Sparks lied during the trial. Contrary to Knight's assertion, Sparks never admitted in the phone call that he had lied. Without such an admission by Sparks, the phone call contains no credible or material information. To that end, the circuit court found that "the actual words used by Sparks are brief and general in nature, agreeable to anything being suggested by the caller. It is the caller who is stating that Sparks lied." The court further observed that "[a]ll Sparks states is his general willingness to try to mitigate his sin of testifying against another inmate and taking him away from his family." Thus, "[t]he phone call does not constitute an admission. It could be an admission, but it could also be exactly what Sparks present[s] it as." The court's finding that this evidence is not material is not clearly erroneous and, therefore, it is not newly discovered evidence warranting a new trial.

¶30 Regarding Sparks' alleged conversation with Lewis, we also conclude that the circuit court's decision is not clearly erroneous. The court found Lewis' testimony was not credible, and incredible evidence is not relevant or material. As the court determined, the problem with Lewis' testimony "is that it is uncorroborated in the face of a denial by the witness Sparks." In order to believe Lewis, the court "would have to believe that no one in that pod full of inmates nor the defendant himself thought to raise the matter of the State's witness admitting to perjury." As the court pointed out, "Knight certainly had every reason to bring it up as soon as he learned of it." However, as no other witness came forward to corroborate Lewis' account, the court found Lewis' testimony to be not credible. Consequently, the court's conclusion that "it is not material to a determination of the issues in this case" is not clearly erroneous.

13

¶31     Because this evidence is not material to the issue of Knight's guilt, it does not constitute newly discovered evidence warranting a new trial. *See Vollbrecht*, 344 Wis. 2d 69, ¶18. We therefore conclude that the circuit court did not erroneously exercise its discretion in denying Knight's supplemental postconviction motion.

## CONCLUSION

¶32     For the foregoing reasons, we uphold the judgment of conviction and the circuit court orders denying Knight's postconviction motions for a new trial.[5]

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5

---

[5] To the extent that we do not fully address an argument raised by the parties, we note that we need not address every argument when another one is dispositive of an issue. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (the court of appeals need not address all issues if one issue raised by the parties is dispositive).