**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 13, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2024AP1923-CR
2024AP1924-CR
2024AP1925-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2019CF1525
2020CF2585
2020CF2958

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MAX E. BELL,

DEFENDANT-APPELLANT.

APPEAL from judgments of the circuit court for Dane County: JOSANN M. REYNOLDS, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

¶1 KLOPPENBURG, J. A jury found Max E. Bell guilty of multiple charges in three criminal cases that were joined for purposes of a single trial. The charges arose out of three separate incidents—in February 2018, September 2019,

and July 2020—involving three different victims at three different locations in Verona and Madison.  In each incident, it was alleged that Bell arranged to meet with and then met a female sex worker, ostensibly for the purpose of consensual sex, and then violently assaulted her, in two cases also violently sexually assaulting her and in the third fleeing from the screaming victim without committing a sexual assault.

¶2      On appeal, Bell argues that the circuit court erred by joining the charges in the three cases together for a single trial because the statutory circumstances in which joinder may be proper are not present here.  Bell also argues that the court erroneously considered, as part of its analysis of whether joinder is proper, that joinder would not cause substantial prejudice to him.  In the alternative, Bell argues that, if the court correctly considered prejudice as part of its joinder analysis, the court erred in determining that joinder would not cause substantial prejudice to him.  Also in the alternative, Bell argues that, if the charges in the cases were properly joined, he is entitled to severance of the cases for trial.  Accordingly, Bell asks this court to reverse the judgments of conviction and remand to the circuit court to sever the charges and grant Bell a separate trial in each of the three cases.

¶3      The State responds that the circuit court properly determined that one or more of the circumstances for proper joinder is present.  The State also appears to argue that the court should not have considered prejudice as part of its joinder analysis.  In addition, the State argues that we need not address the prejudice issue on appeal because Bell did not file a motion in the circuit court to sever the charges.  In the alternative, the State argues that the court correctly determined that joinder would not cause substantial prejudice to Bell.

¶4      We conclude that the circuit court correctly determined that joinder was proper because the crimes charged in the three cases involve acts that constitute "parts of a common scheme or plan" to meet a female sex worker and violently assault her, in two cases also violently sexually assaulting her. *See* WIS. STAT. § 971.12(1) (2023-24) ("Two or more crimes may be charged in the same complaint … if the crimes charged … are based on … 2 or more acts or transactions … constituting parts of a common scheme or plan."); § 971.12(4)("The court may order 2 or more complaints … to be tried together if the crimes … could have been joined in a single complaint….").[1]  We also conclude that, while neither Bell nor the State argued in the circuit court that the court erred in considering prejudice as part of its joinder analysis, both parties argued whether joinder would prejudice Bell in the circuit court, and this is a legal question that both parties address on appeal.  Accordingly, we disregard forfeiture, and we conclude that the court could properly consider prejudice in its joinder analysis, and, furthermore, that Bell does not show that the court erroneously exercised its discretion in determining that he would not be prejudiced by joinder of the charges.  *See* § 971.12(3) ("If it appears that a defendant or the state is prejudiced by a joinder of crimes … for trial together, the court may order separate trials of counts….").  We do not address Bell's alternative argument that, if the court properly ordered joinder, he is entitled to severance, because he did not move for severance in the circuit court and, therefore, he has forfeited that argument.  Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.  The 2023-24 version of the relevant statutes has not materially changed from the version of the statutes in effect when Bell committed the crimes in 2018, 2019, and 2020.

**BACKGROUND**

¶5      The State charged Bell with multiple crimes in three separate criminal complaints. We now summarize the charges and allegations in each criminal complaint in the chronological order in which the complaints were issued.

¶6      *Dane County Case No. 2019CF1525*. In July 2019, the State issued a criminal complaint charging Bell with one count of strangulation and suffocation, and one count of pandering – solicitation. The complaint alleged that A.B. told detectives the following.[2] On February 14, 2018, A.B. met Bell at a residence in Verona for the purpose of having sexual intercourse in exchange for money, after Bell responded to an online advertisement. The two arranged the meeting via telephone, using a phone number associated with Bell. Bell took A.B. into the basement of the residence, and, when Bell went to give A.B. money, he moved behind her and started "choking" her. A.B. "damn near passed out" and had difficulty breathing. Bell then instructed A.B. to lie on a mattress on the floor and engaged in vaginal and anal intercourse with A.B., during which Bell "grabbed [A.B.'s] throat more than once" and also pinned A.B.'s arm behind her back, causing her pain, and A.B. told him, "Stop, don't do this." Although A.B. had met Bell for the purpose of having sex, she did not "agree for it to go down the way it did," and she feared for her life "the whole time."

¶7      The complaint also alleged that a forensic nurse examination on the date of this encounter documented that A.B. had bruising in her right ear canal consistent with strangulation.

_____

[2] Consistent with the policy stated in WIS. STAT. RULE 809.86(4), for the victim in each of the joined cases, we use initials that do not correspond to the victim's actual name.

¶8 The complaint further alleged that Bell told detectives that he had sex with a female in the basement of the residence, and he did not know her name because they met on a "casual encounters" website. He said that the sex was consensual.

¶9 *Dane County Case No. 2020CF2585.* In October 2020, the State issued a criminal complaint charging Bell with one count of second degree sexual assault and two counts of felony bail jumping. The complaint alleged that C.D. told detectives the following. On July 15, 2020, C.D. met Bell in Madison after Bell responded to an ad that C.D. had posted online. C.D. went with Bell to his parked vehicle, and they began having consensual sex, but when Bell was unable to climax, C.D. told him "get off me" and "time's up." When C.D. then tried to push Bell away from her, he "put[] his entire weight on her" and "grabbed her left arm in a wrestling hold and pulled it behind her back," which caused C.D. pain. C.D. tried to elbow and punch Bell while screaming "stop" and "get off" "as loud as [she] could." During the altercation, Bell engaged in anal intercourse with C.D. without her consent. C.D. hit Bell in the eye, causing him to stop.

¶10 The complaint further alleged that Bell was identified through DNA evidence collected from C.D.'s underwear.

¶11 *Dane County Case No. 2020CF2958.* In November 2020, the State issued a criminal complaint charging Bell with one count of substantial battery and one count of felony bail jumping. The complaint alleged the following. On September 17, 2019, two individuals called Madison police to report a female screaming outside a residence in Madison. When an officer arrived, he made contact with E.F., who had blood on her face, hair, neck, and upper chest. E.F. said that she had arranged to meet an unknown man who had responded to an ad

5

that E.F. had posted online. The messages that they exchanged indicated that they made plans to meet for a consensual sexual encounter that the man would pay for. When E.F. arrived at the address that was provided, a man who identified himself as Justin told her they needed to walk down between two residences to access his room in the back of one of the residences. E.F. began walking in that direction, and with no warning of any kind the man attacked her from behind. The man punched E.F. multiple times in the back of her head, and she began screaming. The man struck her with "blow after blow" and kicked her sides, until her screaming appeared to scare the man away. The attack caused E.F. pain, and she did not give anyone permission to punch or kick her.

¶12 The complaint also alleged that medical records from E.F.'s treatment in the emergency room after this encounter documented that E.F. suffered injury to her head, bleeding from her ear and scalp, various lacerations that required stitches, a contusion, and pain in her left wrist and right hand.

¶13 The complaint further alleged that in October 2020, E.F. contacted police to report that she recognized Bell in a photograph in an online news article, and she identified him as the man who had attacked her in September 2019.

¶14 In each of the three cases, there was evidence that the victims suffered pain and visible injuries as a result of Bell's conduct.

¶15 In November 2021, the State moved to join Bell's three criminal cases for trial.[3] The State argued that the cases are similar in nature and

---

[3] A total of four cases were joined, but the fourth case was dismissed before trial. The dismissed case is not at issue in this appeal.

demonstrate a common scheme or plan. If not joined, the State argued that much of the evidence from each case would be admissible in the other cases as other acts evidence. The State also argued that, because much of the evidence from all three cases would be admissible in each case, joinder would not result in substantial prejudice to Bell.

¶16 Bell objected to joinder, arguing that the cases are not sufficiently similar. He noted that the cases involve different victims and different types of alleged assault, and took place over the span of over two years. Bell also argued that joinder would confuse the jury because it would be difficult to "follow" the testimony of the multiple witnesses across the three cases, and that any benefit of joinder was outweighed by the risk of "unfair prejudice."

¶17 The circuit court held a hearing on the joinder motion. The court concluded that joinder was appropriate because the cases "all have a similar scheme [or] plan…. There [are] … far too many similarities." The court went on to say that, if the cases were tried separately, at each of the three trials evidence from the other two cases "could come in [to show motive, opportunity, intent, and plan]. So by separating them and trying [multiple] jury trials instead of one does not serve the judicial economy, the victims, the witnesses, [or] your resources because we would be hearing the same facts repeatedly in the other cases." The court also indicated that it would issue an appropriate limiting instruction to the jury. The court then issued a written order granting the State's motion for joinder.

¶18 The three cases were tried together at a three-day jury trial in July 2022. The jury found Bell guilty on all counts. Bell appeals.

7

## DISCUSSION

¶19    We first summarize the standard of review and legal principles governing decisions on joinder and explain why we conclude that joinder was proper here, that the circuit court could properly consider prejudice in its joinder analysis, and that Bell does not show that the court erroneously exercised its discretion in determining that he would not be prejudiced by joinder. We then explain why we do not address as forfeited Bell's alternative argument that, if joinder was proper, he is entitled to severance.

### I. Joinder

¶20    We now summarize Wisconsin statutes that address how prosecutors may charge multiple offenses and how circuit courts are to address joinder and severance issues.

¶21    Under WIS. STAT. § 971.12(1), titled "Joinder of crimes,"

> Two or more crimes may be charged in the same complaint, information[,] or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

¶22    WISCONSIN STAT. § 971.12(4), titled "Trial together of separate charges," provides:

> The court may order 2 or more complaints, informations[,] or indictments to be tried together if the crimes and the defendants, if there is more than one, could have been joined in a single complaint, information or indictment. The procedure shall be the same as if the prosecution were under such single complaint, information or indictment.

¶23 Turning to severance, under WIS. STAT. § 971.12(3), titled "Relief from prejudicial joinder,"

> If it appears that a defendant or the [S]tate is prejudiced by a joinder of crimes or of defendants in a complaint, information[,] or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants[,] or provide whatever other relief justice requires.

¶24 Construing WIS. STAT. § 971.12(1) and (4) together, circuit courts may join for purposes of a single trial the charges contained in multiple charging documents when one of four specific circumstances is present: (1) the crimes "are of the same or similar character"; (2) the crimes "are based on the same act or transaction"; (3) the crimes are based on two or more acts or transactions that are "connected together"; or (4) the crimes are based on two or more acts or transactions that "constitut[e] parts of a common scheme or plan." § 971.12(1); *State v. Salinas*, 2016 WI 44, ¶31, 369 Wis. 2d 9, 879 N.W.2d 609.

¶25 The circuit court's joinder decision is reviewed de novo, and we are to construe the joinder statutory provisions broadly in favor of joinder. *State v. Watkins*, 2021 WI App 37, ¶¶22-23, 398 Wis. 2d 558, 961 N.W.2d 884; *Salinas*, 369 Wis. 2d 9, ¶¶30-31.

¶26 WISCONSIN STAT. § 971.12(3) authorizes the circuit court to consider whether the defendant or the State would be prejudiced by the joinder of crimes or defendants, when one or more of the circumstances in § 971.12(1) are present, such that relief from the joinder is appropriate. The decision to grant severance or "other relief" based on prejudice is reviewed for an erroneous exercise of discretion. *See Salinas*, 369 Wis. 2d 9, ¶30.

9

¶27    The appellate briefing on both sides raises questions about the role that an analysis of "prejudice" can play in an analysis of joinder under WIS. STAT. § 971.12(1) and (4) and severance under § 971.12(3).  It is indisputable that a court may consider prejudice when making a decision about whether to sever previously joined cases.  What is disputed is whether and to what extent a court may consider prejudice when deciding whether to join cases in the first instance. While neither of the parties argued in the circuit court that the court erred in considering prejudice as part of its joinder analysis, both parties argued in the circuit court whether joinder would prejudice Bell, and this is a legal question that both parties address on appeal.  Accordingly, we disregard forfeiture and address the legal question as follows.  *See State v. Bodoh*, 226 Wis. 2d 718, 737, 595 N.W.2d 330 (1999) (appellate courts may address issue not considered in the circuit court "only when the new issue raised is a question of law, the parties have thoroughly briefed the issue, and there are no disputed issues of fact regarding the new issue").

¶28    Generally speaking, courts have reviewed a circuit court's consideration of whether prejudice warrants relief from joinder under WIS. STAT. § 971.12(3) in the context of the circuit court's decision on a motion to sever joined charges or defendants.  *See, e.g.*, *State v. Hoffman*, 106 Wis. 2d 185, 208, 316 N.W.2d 143 (Ct. App. 1982) (distinguishing the decision to order joinder in the first instance from the decision to sever charges that have been joined in response to a motion for severance); *Salinas*, 369 Wis. 2d 9, ¶30 (same). However, that does not mean that prejudice may only be considered in the context of a motion to sever, nor does it mean that an analysis of prejudice plays no role in the decision to join cases for purposes of trial.  Indeed, our supreme court has also stated the more general proposition that, "*in the absence of a showing of*

10

*substantial prejudice*," "joinder will be allowed in the interest of the public in promoting efficient judicial administration and court fiscal responsibility in conducting a trial on multiple counts." ***State v. Hall***, 103 Wis. 2d 125, 141, 307 N.W.2d 289 (1981) (emphasis added).

¶29     Our supreme court in ***Hall*** analogized the prejudice referred to in WIS. STAT. § 971.12(3) to the prejudice that must be shown for a party to satisfy the third part of the three-part test set forth in ***State v. Sullivan***, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998), regarding evidence of other acts offered in a case involving crimes that are not based on those other acts.[4] ***Hall***, 103 Wis. 2d at 141-42. The broad language in ***Hall*** quoted above appears to acknowledge that, when a circuit court determines whether to order joinder under § 971.12(1) and (4), the court may apply the ***Sullivan*** test to assess the risk of prejudice under § 971.12(3). That is, the court could apply the third part of the ***Sullivan*** test at the joinder stage of the litigation to determine whether the evidence supporting charges in one case would be admissible in the other cases if the charges were tried separately. This makes sense based on the proposition that when the evidence of charges that might properly be joined "would be admissible in separate trials, the risk of prejudice arising because of joinder is generally not significant." ***State v. Locke***, 177 Wis. 2d 590, 597, 502 N.W.2d 891 (Ct. App. 1993) (reviewing a circuit court's application of the ***Sullivan*** other acts test to determine if joinder is unfairly prejudicial); ***Hall***, 103 Wis. 2d at 141.

---

[4] The three parts of the ***Sullivan*** test are: (1) the evidence must be offered for a permissible purpose under WIS. STAT. § 904.04; (2) the evidence must be relevant under WIS. STAT. § 904.01; and (3) the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. ***State v. Sullivan***, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998).

11

¶30    Based on this case law, and given the overlap between the reference to prejudice in WIS. STAT. § 971.12(3) and the concept of unfair prejudice in the third part of the *Sullivan* analysis, we conclude that a circuit court may, as part of its joinder analysis, consider whether the evidence of the defendant's purported "other acts" in the joined cases would be admissible in any one of the cases if they were tried separately. *See State v. Davis*, 2006 WI App 23, ¶14, 289 Wis. 2d 398, 710 N.W.2d 514 (explaining that our supreme court approved joinder "because the evidence of each crime would be admissible in separate trials for each"); *cf. State v. Leach*, 122 Wis. 2d 339, 357, 363 N.W.2d 234 (Ct. App. 1984), *rev'd on other grounds*, 124 Wis. 2d 648, 370 N.W.2d 240 (1985) (concluding on de novo review that joinder was improper because the commonality between the cases was "insufficient to warrant the introduction of 'other [acts]' evidence").

¶31    Stated more broadly, and consistent with the language of WIS. STAT. § 971.12(1), (3), and (4), and the case law cited above, we conclude that, in deciding a motion for joinder, a circuit court may consider not only whether one or more of the four circumstances in § 971.12(1) are present, but also whether joinder would prejudice the defendant or the State such that appropriate relief is warranted under § 971.12(3), by applying a *Sullivan* other acts analysis. In other words, pertinent here, in response to a State motion for joinder, the defendant may argue that joinder is not proper both because the circumstances for joinder are not present under § 971.12(1) and because joinder would prejudice the defendant under § 971.12(3). Then, to complete the picture, closer to trial a defendant may file a motion to sever charges that had earlier been joined based on circumstances that were not known or were known but not fully appreciated at the time the circuit court ordered joinder, or on evidence expected to be presented at trial based on ongoing discovery and investigation by either side.

¶32    With these principles in mind, we review first the part of the circuit court's decision here that joinder was proper because one or more of the circumstances stated in WIS. STAT. § 971.12(1) are present, and then the part of its decision that joinder would not prejudice Bell because the evidence of the charges in each case would be admissible in the other two cases if there were three trials.

¶33    As set forth above, the joinder statute provides four circumstances in which initial joinder may be proper, WIS. STAT. § 971.12(1), and whether one or more of these circumstances are present is a question of law that we review de novo. *Watkins*, 398 Wis. 2d 558, ¶22.

¶34    We now explain why we conclude that the charged crimes here, summarized above, are based on acts or transactions that constitute "parts of a common scheme or plan" to meet a female sex worker for consensual sex, direct her to an isolated location, and violently assault her, in two cases also violently sexually assaulting her and in the third running from the screaming victim without committing a sexual assault.[5]

¶35    Our supreme court has directed that the words "common scheme or plan" are "common words with known meanings" that require no particular definition. *Salinas*, 369 Wis. 2d 9, ¶45. We review the allegations in the three cases at issue with those known meanings in mind.

---

[5] Because our conclusion that the circuit court properly joined the charged crimes under the "common scheme or plan" provision of WIS. STAT. § 971.12(1) is dispositive of the issue of proper joinder, we do not address Bell's arguments that the charged crimes were improperly joined under the "same or similar character" or "connected together" provisions of the statute. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶36 Our summaries of the allegations above establish that the charges in all three cases arose from encounters in which Bell exhibited the same modus operandi, defined as "a distinct pattern or method of operation," *see Modus Operandi*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/modus%20operandi (last visited Nov. 7, 2025): arranging to meet and then meeting a sex worker for consensual sex, directing her to an isolated location, and violently assaulting her and twice also violently sexually assaulting her. Our supreme court has likened the use of the same modus operandi to the use of a common scheme or plan under WIS. STAT. § 971.12(1). *See Francis v. State*, 86 Wis. 2d 554, 560-61, 273 N.W.2d 310 (1979) (concluding that charges were properly joined because the acts or transactions "exhibit[ed] the same *modus operandi*" and, therefore, constituted parts of a common scheme or plan); *Salinas*, 369 Wis. 2d 9, ¶39 (stating that, while *Francis* discussed joinder in terms of the crimes having a common scheme or plan that established identity, the statute is not limited to cases in which identity is at issue). In other words, the same modus operandi as defined above comports with the known meanings of the terms "common scheme or plan" as used in § 971.12(1). *See Salinas*, 369 Wis. 2d 9, ¶¶39, 45. Because the charges in the three cases here are based on facts and transactions exhibiting the same modus operandi, the charges involve facts or transactions that constitute a common scheme or plan under § 971.12(1), and, therefore, the charges were properly joined.

¶37 Bell argues that the charged crimes in the three cases do not satisfy certain factors that a court may consider in determining whether to order joinder. However, the case law that Bell cites does not address the "common scheme or plan" provision in WIS. STAT. § 971.12(1). The cases he cites identify factors that a court may consider in determining whether the crimes satisfy the "connected

14

together" or "same or similar character" provisions in the statute. *See Watkins*, 398 Wis. 2d 558, ¶¶24, 26-35; *Salinas*, 369 Wis. 2d 9, ¶43; *Hoffman*, 106 Wis. 2d at 208-09; *State v. Hamm*, 146 Wis. 2d 130, 138, 430 N.W.2d 584 (Ct. App. 1988). Bell does not cite legal authority to support the proposition that those factors matter in determining whether the crimes constitute parts of a "common scheme or plan" for purposes of joinder. Accordingly, we reject this argument on that basis. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating that we will generally not consider arguments unsupported by legal authority).

¶38 Moreover, for purposes of completeness, we briefly explain why Bell's arguments based on these factors fail on their merits. Bell argues that the specific crimes charged across the three cases are dissimilar and that two of the cases do not charge sexual assault. However, the common scheme or plan provision of the joinder statute refers to the facts or transactions underlying the charges, and, as we have explained, those facts or transactions are similar in multiple respects across the three cases regardless of the differences in crimes charged. *See Salinas*, 369 Wis. 2d 9, ¶46 (looking to evidence presented, not charges themselves, when considering whether charges constitute a "common scheme or plan"). In addition, Bell argues that one of the cases does not involve any sexual conduct or exchange of money. However, he disregards the facts that led to the charges in all three cases—arranging to meet for consensual sex with a sex worker, directing the woman to an isolated location, and turning what was supposed to be a consensual sexual meeting into a completely nonconsensual, violent assault. As explained above, it is that set of facts and transactions that suffices to constitute the common scheme or plan. Bell also argues that the facts in the three cases involve encounters that occurred over too long a period of time,

15

namely, the 29-month period between the February 2018 encounter in A.B.'s case, the September 2019 encounter in E.F.'s case, and the July 2020 encounter in C.D.'s case. However, courts have affirmed joinder of acts spanning two years or more and Bell does not persuade us that the timing element meaningfully undermines the similarities of these cases. *See, e.g.*, *Salinas*, 369 Wis. 2d 9, ¶¶19, 38 (over two-and-a-half years); *Locke*, 177 Wis. 2d at 595-96 (two years).

¶39    Bell asserts that there is no common scheme or plan because the crimes are not "connected by conspiracies to suppress witness testimony and avoid punishment." However, Bell cites no legal authority so limiting the common scheme or plan provision in the statute. *See Salinas*, 369 Wis. 2d 9, ¶45 (rejecting limits to the phrase "common scheme or plan," instead relying on the commonly understood meaning of those words).

¶40    We now turn to the issue of prejudice under WIS. STAT. § 971.12(3). When joinder of criminal charges is appropriate under at least one of the four circumstances identified in § 971.12(1), joinder is presumptively non-prejudicial. *State v. Linton*, 2010 WI App 129, ¶20, 329 Wis. 2d 687, 791 N.W.2d 222. In order to rebut that presumption, a defendant must show "substantial prejudice to [the defendant's] defense; some prejudice is insufficient." *State v. Prescott*, 2012 WI App 136, ¶13, 345 Wis. 2d 313, 825 N.W.2d 515. As stated, courts have analogized the substantial prejudice that a defendant must show to be entitled to relief from proper joinder to the unfair prejudice that a defendant must show from the admission of other acts evidence under the third part of the *Sullivan* test. Under that part of the test, for evidence of other acts to be admitted, the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73.

16

¶41    Unfair prejudice in the context of the admission of other acts evidence results from evidence that "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *Id.* at 789-90. Case law states that the risk of unfair prejudice may be effectively mitigated by the circuit court giving limiting instructions to the jury that are tailored to the facts of the case. *State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158; *Sullivan*, 216 Wis. 2d at 791. As stated, we review for an erroneous exercise of discretion a circuit court's determination that a defendant will not be prejudiced by proper joinder because any risk of prejudice to the defendant by the admission of other acts evidence will not substantially outweigh the probative value of that evidence. *See Salinas*, 369 Wis. 2d 9, ¶30; *Hall*, 103 Wis. 2d at 140-41.

¶42    Here, the circuit court determined that the evidence in all three cases would be admissible if each case were tried separately. Specifically, the court determined that, given that the facts underlying the charges in the three cases exhibited a common scheme or plan, the evidence in each of the cases could by definition be offered by the State for, and relevant to, the permissible purposes of proving "motive, opportunity, intent, [and] plan," as well as identity, in the other cases. *See Sullivan*, 216 Wis. 2d at 772 (steps one and two in *Sullivan* analysis are whether the evidence is offered for a permissible purpose under WIS. STAT. § 904.04 and whether the evidence is relevant under WIS. STAT. § 904.01). The court further implicitly determined that, given the similarities that the court noted in the evidence of salient facts in each encounter—Bell arranging to meet a sex worker for consensual sex, directing the woman to an isolated location, and violently assaulting her—the evidence of each encounter is highly probative of

17

these permissible purposes. *See Sullivan*, 216 Wis. 2d at 772-73 (relevance under step two of *Sullivan* analysis includes whether the evidence has probative value). The court also implicitly determined that no unfair prejudice would result because of the high probative value of the similar facts across the three cases and the limiting instructions it would give to the jury. *See id.* (step three of *Sullivan* analysis is whether probative value is substantially outweighed by risk of unfair prejudice).

¶43 We conclude that Bell has not shown that the circuit court erroneously exercised its discretion in determining, as part of its joinder analysis, that joinder would not result in substantial prejudice to him. As to the similarity of the facts across the three cases, the allegations were that in each case Bell set up and then violently assaulted a sex worker and, therefore, the court could reasonably conclude that the admission in one trial of the facts relating to the assaults in each of the three cases would not appreciably horrify the jury or provoke its instinct to punish beyond the facts of the violent assault in each case alone. Likewise, the court could reasonably conclude that, given the relatively straightforward details of each attack connected with each victim, with each incident clearly separated in time and location, admission of those facts was not likely to confuse the jury. As to the limiting instructions, the court expressly cautioned the jury against using the evidence offered in the other two cases to find Bell guilty of the charges in any one case, and to limit its consideration of the facts in the other two cases to specific issues. Specifically, the court instructed the jury that the trial involved three different cases, and that the jurors could not use a determination of guilt in one case to find guilt in another case. The court further instructed the jury to limit its consideration of the facts from the other cases to

issues of motive, opportunity, intent, and plan, when it was determining the elements of an offense in any one case.

¶44 Bell argues that joinder was inappropriate because he showed a substantial risk of prejudice.[6] Specifically, he argues that the evidence of his guilt in each of the three cases was not overwhelming, and that multiple studies establish the high risk of prejudice to a defendant from the jury attributing guilt to the defendant's criminal disposition and confusing the evidence across cases. We disagree. There was strong evidence of guilt in each case based on each victim's testimony and supporting expert testimony, DNA evidence, and documented injuries to each victim. Further, Bell's argument fails to take into account the basis for joinder—evidence of acts or transactions constituting a common scheme or plan—as well as the basis for admission in each case of the evidence in the other two cases, along with the circuit court's limiting instructions to the jury. As explained above, the circuit court could reasonably determine that the basis for joinder and the basis for admission of other acts evidence, along with the limiting jury instruction, work together here to render any prejudice by joinder insignificant.

---

[6] The State argues that the issue of prejudice is not before us because Bell did not move the circuit court to sever the charges, citing *State v. Salinas*, 2016 WI 44, 369 Wis. 2d 9, 879 N.W.2d 609. The State's argument fails for at least the following reasons. First, as noted in the text above, Bell argued that he would be substantially prejudiced in his opposition to the State's motion for joinder in the circuit court, and the court addressed prejudice in its joinder analysis; therefore, Bell preserved the issue of prejudice for appeal. Second, *Salinas* does not support the State's argument in these circumstances. In that case, our supreme court ruled that the issue of harmless error was not before it because the defendant did not move for severance in the circuit court. *Id.*, ¶¶47-49. Here, we address prejudice, not harmless error. Also, unlike *Salinas*, 369 Wis. 2d 9, ¶48, in which the defendant apparently did not raise prejudice in the circuit court, as just noted, Bell did raise prejudice in the circuit court.

19

¶45    Bell also faults the circuit court for determining that the evidence in all three cases would be admissible in each case, without engaging in "a full *Sullivan* analysis." However, as explained above, the record supports the court's implicit exercise of discretion in determining the admissibility of the evidence of each encounter across the three cases under all three parts of the *Sullivan* test.

## II. Severance

¶46    Bell argues that, if the charges in the cases were properly joined, he is entitled to severance. However, the record establishes that Bell did not file a motion for severance, either in response to the State's motion for joinder or at any other time before trial. Accordingly, he has forfeited his severance argument on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (when a party fails to specifically raise an issue before the circuit court in a manner that allows the court to address the issue, the party forfeits that issue on appeal).

¶47    Bell argues that severance is properly before us because he argued in the circuit court in connection with the joinder issue that he would be substantially prejudiced. Here, the circuit court addressed the issue of prejudice under the joinder statute and under the *Sullivan* test, and we have affirmed the court's decision on the issue of prejudice as to both aspects in the context of the court's initial joinder decision. However, our supreme court has explained that a decision to sever properly joined charges is distinct from the initial joinder decision, and that a severance decision requires that the circuit court exercise its discretion based on standards and facts distinct from those that apply to a joinder decision. *See Salinas*, 369 Wis. 2d 9, ¶30. We decline to review a discretionary decision that the circuit court did not reach to deny a motion to sever that Bell did not make.

20

¶48 Because Bell fails to provide a persuasive reason that we should entertain his severance argument despite his failure to preserve it in the circuit court, we do not consider it further. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (we generally do not consider issues raised for the first time on appeal).

## CONCLUSION

¶49 For the reasons stated, we affirm the circuit court's order joining for trial the charges in Bell's three criminal cases.

*By the Court.*—Judgments affirmed.

Recommended for publication in the official reports.